59 F.3d 175
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Sandia HAN, individually, as Executrix of the Estate of Swie
Han, Plaintiff-Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.
 No. 93-17261.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 13, 1995.*
Decided June 20, 1995.
 
 Before: GOODWIN, FARRIS, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiffs appeal the district court's grant of summary judgment to State Farm. They contend that the district court erred in concluding that State Farm had no duty to defend them in an underlying state action. The district court had diversity jurisdiction under 28 U.S.C. Sec. 1332. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 3
 In 1965 Daniel Leavitt sold a portion of his property in Moraga, California, to James Turre. The property retained by Turre included several wells. As part of the sale, Leavitt and Turre executed a Water Agreement, which provided that Turre could draw up to 2,000 gallons of water per day from Leavitt's wells.
 
 
 4
 The Leavitts sold the water-bearing parcel to Swie and Sandia Han and Stan and Alice Hahn in 1977. A drought in 1988 diminished the water supply on the property, and the Turres were unable to draw 2,000 gallons per day. In accordance with the Water Agreement, the Turres sought to explore for additional water on the Hans and Hahns' property. When they refused, the Turres brought suit in California Superior Court.
 
 
 5
 The Hans and Hahns each had homeowner's policies and personal umbrella policies issued by State Farm. Shortly after filing of the Turres' complaint, the Hans and Hahns separately tendered the defense of the lawsuit to State Farm. Coverage was denied. In response, the Hans and Hahns brought this suit alleging breach of contract, bad faith, fraud, and intentional and negligent infliction of emotional distress. The district court granted summary judgment to State Farm on all claims. This timely appeal followed.
 
 DISCUSSION
 
 6
 We review de novo a district court's grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).
 
 
 7
 Plaintiffs contend that the district court erred in concluding that State Farm had no duty to defend them against the Turre suit. According to plaintiffs, the Turres' claims against them raised the potential for a covered loss, thereby obligating State Farm to accept the tendered defense. We reject the argument.
 
 
 8
 California law requires an insurer to defend its insured against lawsuits if: (1) the suit raises the potential for covered losses; or (2) ambiguous policy language leads the insured to reasonably expect that a defense will be provided. Gray v. Zurich Ins. Co., 54 Cal. Rptr. 104 (1966); Producers Delivery Dairy Co. v. Sentry Ins. Co., 226 Cal. Rptr. 558 (1986); see also Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1364 (9th Cir. 1991). Plaintiffs do not allege ambiguity in the language of the policies. The sole issue is whether the Turre suit created a potential for coverage.
 
 
 9
 State Farm issued identical homeowner's and personal liability umbrella policies to the Hans and Hahns.[1] The homeowner's policies provided:
 
 
 10
 If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
 
 
 11
 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
 
 
 12
 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate ....
 
 
 13
 (emphasis added).
 
 
 14
 "Occurrence" is defined in the polices as "an accident ... which results in[] bodily injury; or property damage during the policy period." Similarly, the personal liability umbrella policies cover a loss from "an accident that results in personal injury or property damage." Plaintiffs were therefore entitled to a defense only if the Turre suit potentially sought recovery for damages because of property damage or bodily injury.
 
 
 15
 California courts presented with similar coverage provisions have "uniformily interpreted [them] as referring to liability 'ex delicto' as distinguished from 'ex contractu."' Insurance Co. of the West v. Haralambos Beverage Co., 241 Cal. Rptr. 427, 430 (Cal. App. 1987). Consequently, such policies "cover tort, but not contract liability." Id.
 
 
 16
 The Turre complaint stated six causes of action. Claims I and II sought specific injunctive relief regarding use of water on plaintiffs' property. Claims III through V sought judicial determinations of the rights of the various parties. Each of these five claims was founded upon plaintiffs' alleged breach of the Water Agreement. They therefore sounded in contract, not tort. Plaintiffs' policies plainly did not provide coverage for these claims. Id.; International Surplus Lines Ins. Co. v. Devonshire Coverage Corp., 155 Cal. Rptr. 870 (1979); see also Chamberlain, 931 F.2d at 1364-65.
 
 
 17
 The Turres' sixth claim was for negligent and intentional infliction of emotional distress caused by the alleged contractual breach. Although this claim alleged tortious conduct, it did not create coverage under plaintiffs' policies. "[T]he assertion of a negligence claim in the underlying suit [does] not alter the fundamental nature of [plaintiffs'] claims." Chamberlain, 931 F.2d at 1365. Because plaintiffs' alleged right of recovery in the Turres suit stemmed from a contract, neither the homeowner's nor the personal liability umbrella policies provided coverage. Id.; see also Fragomero v. Insurance Co. of the West, 255 Cal. Rptr. 111, 116 (Cal. App. 1989) (to determine whether claim sounds in contract or tort, "the gravamen of the facts giving rise to the right to recovery must be examined.").
 
 
 18
 No potential for coverage existed. State Farm was justified in rejecting plaintiffs' tender of defense. Giddings v. Industrial Indem. Co., 169 Cal. Rptr. 278, 280 (Cal. App. 1980) (where no potential for coverage exists, the insurer need not provide the insured with a defense); see also Chamberlain, 931 F.2d at 1364. The district court properly granted summary judgment to State Farm.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case appropriate for decision without oral argument. Fed. R. App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 While this matter was before the district court, the parties were apparently unaware that the Hahns had a personal liability umbrella policy. The district court's Memorandum Decision and Order therefore refers only to the Hans' personal umbrella policy. The parties' oversight is of no consequence, however, as the Hahns' umbrella policy from State Farm is identical to the Hans'